We will hear argument next in Case 1954-10, Borden v. United States. Mr. Shadmugam? Thank you, Mr. Chief Justice, and may it please the Court. This case concerns the interpretation of the Armed Career Criminal Acts Force Clause. The most natural reading of that clause is that it reaches only uses of force that are intentionally or knowingly aimed at another person. The Force Clause, therefore, does not reach a person who uses force recklessly, because such a person is indifferent as to whether the force used falls on another person or on no one at all. Such an interpretation not only is compelled by the text of the Force Clause, but is supported by its broader context. Namely, to define the phrase violent felony and to identify those repeat offenders who are likely to point a gun at someone in the future and thus warrant a minimum of 15 years in prison. Until recently, our interpretation was the uniform interpretation of the Courts of Appeals, which relied on the text of the Force Clause and this Court's decision in Leocal construing it. That was seemingly settled law and it gave rise to no apparent problems with the statute's reach. But in the wake of this Court's decision four years ago in Voisin, some Courts of Appeals, including the Court below, reversed course and adopted a contrary interpretation. Those Courts were mistaken. In Voisin, this Court was interpreting different statutory language in a wholly different context and it expressly reserved the question presented here. The government advocates an interpretation of the Force Clause that is grossly over-inclusive, sweeping in offenses such as reckless driving and thereby dramatically expanding the scope of the act. The text of the Force Clause does not support that interpretation and it certainly does not unambiguously dictate it. At a minimum, given that every Court of Appeals had until recently rejected the government's interpretation, this Court should apply the rule of lenity and hold that the Force Clause excludes reckless offenses. Whether as a matter of plain text or as a matter of lenity, the judgment of the Court of Appeals should be reversed. I welcome the Court's question. Thank you, Mr. Shanmugam. You rely heavily on leotel and its statement, just to quote, that it's not natural to say that a person actively employs physical force against another person by accident. I'm not sure I understand that. If I'm, you know, at a sports event and jump up and wave my arms cheering and hit the person next to me, haven't I employed physical force against that person by accident? Perhaps, Mr. Chief Justice, because in that hypothetical, the use of force is volitional, but we're really relying on a separate aspect of leotel's reasoning. That is that the against phrase is the critical and key phrase that limits the use of physical force and that defines the necessary degree of intent. And that's really how to reconcile leotel with Boisin. In Boisin, the Court was interpreting a statute that lacked that limiting language and the Court appropriately relied on the aspect of leotel's reasoning to which you point and holding that the unlimited language reaches more broadly. Well, what about something that's in recklessness? You know, if I'm, as part of a prank, I'm swinging a bat at someone, of course, meaning not to hit them, but, you know, the bat slips and it does hit them. You'd certainly say that the conduct was reckless and you'd say that it's directed against another person. So why isn't recklessness enough under that standard? I would certainly say in that hypothetical, Mr. Chief Justice, that you have used physical force, but I would not say that you have used physical force against a person of another. And the government's alternative interpretation, I would respectfully submit, really reads the against phrase out of context. Well, I don't understand that. If I'm swinging the bat at him, I'm certainly, and it ends up hitting him, I'm using physical force. I'm doing the swinging and it's against him. I'm looking at him and swinging the bat at him. Well, if you're looking at him and swinging the bat at him, that is much closer to intent. But I think what I would say, if you do it recklessly. No, no, I don't mean to hit him. I have no intent to hit him. It's a joke. But unfortunately, the bat slips. Well, I would say that in that circumstance, you've used physical force and the force has fallen on the other person. And again, if you accept the government's reasoning, I think it really would include not just reckless offenses, but also negligent offenses. And of course, that was the whole point of the relevant reasoning in Leocal. The court made quite clear that it was excluding not just accidental offenses, but also negligent offenses, and that it was relying on the against phrase. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, I'd like you to go back to your reliance on the against phrase in your efforts to distance this case from Huazin. I thought that in Huazin that the statute there covered the use of force by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse. So it seems that even though it doesn't use the term against, it does strongly suggest that the absence of that word makes absolutely no difference to the analysis. So I don't think that that's true, Justice Thomas, for two reasons. First, in the opinion in Huazin itself, the court at page 2279 of the Supreme Court Reporter quoted the exact language I was relying on with the Chief Justice. That is to say, it quoted the language from Leocal relying on the phrase against the person or property of another. So I think the court was very sensitive to that. But second, to go to the reference in section 922G9 to a victim, I don't think that the government can get very much purchase out of that. And indeed, the government really doesn't try to rely on that. But I do think that some lower courts have been somewhat misled by it. And let me explain, if I can, why I think that reference isn't tantamount to the inclusion of a phrase like against the person of another. Section 922G9 does not require the use of force against the victim. Instead, it only refers to the victim in defining the offender. And it was really for that reason that this court, in a case called United States v. Hayes, in an opinion written by Justice Ginsburg, concluded that the relationship with the victim is not even an element under section 922G9. And so again, some lower courts have, I think, looked to that reference. But I think that those lower courts have not focused on the fact that this court in Hayes really rejected the notion that this was equivalent to a phrase requiring the use of force against the victim. One final question. Johnson, if we had not held that the residual clause was unconstitutionally vague, would this be the type of case that would have fallen under or statute that would have fallen under the residual clause rather than this clause? Well, perhaps, but with one caveat, Justice Thomas, and I'll be brief. In Begay and then in Sykes, this court had a very vigorous back and forth on whether the residual clause extended to reckless offenses. And I think by the end of Sykes, the court had effectively restricted the residual clause to intentional offenses. And of course, it would be highly anomalous to take a broader view of the first clause here. Thank you. Justice Breyer? Thank you. My one question for you is, suppose we take what I think is the best definition of recklessness. The person is reckless when he consciously disregards a substantial and unjustifiable risk that the bad result will follow. So to take the Chief Justice's example, I have my baseball bat. I'm swinging around. I know I am the worst baseball player in history. I know that this baseball bat is likely to slip out of my hands and bonk somebody on the head. There is a person standing in front of me. I think, oh God, that person may be hit. I don't want him to, but he might be because I'm so bad. And then I swing it and he's hit. All right. What's the difference really between that and my committing a crime knowing that that result is likely to follow or desiring it intentionally, purposely, that it's likely to follow? Sure. So Justice Breyer, I would make two points in response to that. The first is that this is a familiar and meaningful distinction in the law. It's a distinction that the model penal code itself describes as important. And that is simply the distinction between an action that is intended to cause harm and an action that is not intended to cause harm, but merely involves a substantial risk of it. And that is the distinction that we think that the language of the force clause captures. But I would make one additional point that I have not made to date. And that is that even if you think that the against phrase doesn't do all of the work, I would submit that this court's decisions and particularly its decision in Begay do the remainder of the work because they make clear that the relevant language must be understood in its statutory context, which is to provide a definition of the phrase violent felony. And where someone acts recklessly, even though the law obviously attributes to that person a substantial degree of moral culpability, that action simply doesn't fall within the ordinary meaning of violent felony. And the second point I would make, Justice Breyer, is that whatever you might think about sort of the fine gradations in particular hypotheticals, I would respectfully submit that it would be a lot harder to draw the line between recklessness and criminal negligence because negligence itself in the model of penal code is defined as being a situation in which an actor should be aware of, once again, a substantial and unjustifiable risk. As the government recognizes in footnote five of its brief, states often define criminal negligence in recklessness terms. And as Professor Litman's amicus brief recognizes, the line between those two categories is fuzzy. Justice Alito? Suppose a particular defendant has three prior convictions for a second degree murder in a jurisdiction like federal court, I believe, where the minimum mens rea required for that is a form of recklessness. You would say that that person does not qualify under the Armed Career Criminal Act. Is that correct? Not necessarily, Justice Alito. And that is because when you're talking about second degree murder, whether under federal law or under state law, typically the state of mind that's required is the state of mind that we learned about in law school, a so-called depraved heart or extreme recklessness. I think probably the better view is that extreme recklessness still doesn't qualify under our textual interpretation. But I would acknowledge that there are good reasons potentially to treat extreme recklessness differently from ordinary recklessness. The model penal code itself appears to equate that state of mind with intent or knowledge. It equates depraved heart murder with… Well, a typical definition for depraved heart murder simply requires a very high degree of risk and an extreme disregard of life. And you just acknowledge that it would be pretty hard for us to say that's OK, but ordinary recklessness is not. Yeah, I'm happy to acknowledge that, Justice Alito. And again, it's because, as you say, we're talking about extreme indifference to human life, such as shooting into a crowd. And I think courts have pretty consistently treated that as tantamount to acting intentionally or knowingly. All right, suppose the person shooting into a crowd, suppose a person looks at a crowd of people or just looks at a single person. And this person has got a lot of…has got a hairdo that sticks up quite a bit. And on top of the hairdo, there is a hat. And the person says, oh, you know, I don't know how great a shot I am, but I'm going to try to pick off that hat without touching a hair on the person's face, person's head. That would…would it be a stretch to say that that is the use of force against the person of the target? I think it would be a stretch to say that, though. As you say, if the hat is on the person, it sort of feels as if the hat is part of the person. But, you know, again, I'm going to recognize that there may be close cases. There are close cases when prosecutors make charging decisions as to all of these states of mind. I think our principal submission, Justice Alito, is simply the point that you made on the Third Circuit in the Oyebanji case, and that is that a reckless offense, an offense involving ordinary recklessness, although involving a substantial degree of moral culpability, does not fall within the ordinary meaning of violent crime, much less the ordinary meaning of violent felony. Well, you know, I was…I was on a court of appeals at the time, and I acknowledged that I had to follow a Supreme Court opinions, and the latest opinion there was…was legal. Let me see if I can speak in one more question. Suppose the statute referred to the reckless use of force against the person of another. Would that be an incoherent statement? Would that be gibberish? I think in that hypothetical, the explicit use of recklessness might override what would otherwise be the plain meaning of the phrase use of force against the person of another. But I would respectfully submit that that's just not how a person would ordinarily speak, and if Congress was trying to convey that meaning, it would have said something like the use of physical force that recklessly causes injury to another person. All right. Thank you. Thank you much, Thomas. Justice Sotomayor? Counsel, I…I…I accept that there are reckless uses of force that come close to intentional. The Chief, Justice Alito, have given you examples of that. But as I look at the charging statutes that encompass recklessness, many of them, including in Tennessee, where this crime was committed, involve conduct that's hard to think of as reckless and more as negligent. For example, the individual who was charged with recklessly causing injury who was blinded by the sun. And there are other examples of that. Isn't that the whole point of this exercise? That because recklessness is not necessarily an act directed against another person, that's why it cannot qualify as a…as a crime of violence? Yes, that's correct, Justice Sotomayor. And I think it's important for the court to keep in mind here that we're not talking about individual cases. We're talking about state statutes. And state statutes ordinarily draw a meaningful distinction between intent and recklessness. Indeed, the Tennessee statute at issue here separately defines intentional aggravated assault and reckless aggravated assault. Not surprisingly, Tennessee imposes stricter penalties on the former. And so, you know, to the extent, again, that we're talking about extreme recklessness, which tends to come up primarily in the context of murder, I think it would be entirely appropriate for the court either to reserve that question or even to indicate that extreme recklessness is tantamount to intent or knowledge. The second point I would make is, again, looking at state statutes, I really do think that once you start drawing the line between recklessness and negligence, that these are really fine distinctions that involve the degree of risk, the extent of awareness of risk. And, of course, our fundamental submission to the court today is that if you agree, as I think one respectfully must, that this court in Leocal indicated that negligent offenses are excluded, there's simply no way from this statutory language to treat reckless and negligent offenses differently. Thank you, counsel. Justice Kagan? Mr. Shammekham, I'm again interested in your textual argument about the against the person of another phrase. And I guess what some of these hypotheticals that have been thrown your way make me think is that that phrase really just doesn't have anything to do with mens rea. What it has something to do with is the actus reus. You know, it has something to do with defining what the act is, that it's an act directed at the person of another, but is sort of indifferent to what the person's intent is. So I was wondering whether you could respond to that. I would make two points in response to that, Justice Kagan. The first, picking up on something I said earlier, is that in Leocal itself, the court made clear that it viewed that language as defining the degree of intent. And I think that it's easiest to sort of understand that when you think about against, not in isolation as the government would have you do, but again, when you think about using force against the person of another. Again, if I throw a plate at a wall to try to hit a spider and the plate hits my wife instead, I think an ordinary English speaker would say that you're using physical force against the spider and not against my wife. Let me give you a couple of different hypotheticals, and this is a paired set. So the first one should be easy. The first one, I'm a bank robber and I'm running out of the bank and I really have to get out in a hurry and my car is in a parking lot and I see that there's a man right behind my car and I know that when I get out I'm going to run him over. Is that the use of physical force against the person of another? Yes, it is, because you're certain or practically certain that you're going to run over the man. Absolutely. So now exact same facts, except the person is eight feet away from the car. So there's a very substantial risk that when I back up, I'm going to hit him. But it's possible that if the guy is looking just my way and if he's fast enough, he's going to escape. Is that the use of physical force against the person of another? I don't think so, and I think that's true for the reason that we've been discussing. Again, I think that when you're using physical force against a person, that suggests that the force is being directed at that person. But I know that this guy is standing six feet in back of me and he's going to have to be really lucky to get out of the way of my car. He's going to be very fleet of foot, and otherwise I'm going to hit him. I guess there's a difference in risk level, but I don't see why we should say that one is the use of physical force against another and the other is not. I think because you, in that hypothetical, are conscious of the risk, and the risk may be very high, but that is a meaningful distinction of law. And to respond just very briefly to your point about the actus reus, Justice Kagan, I think that if that were all that phrase we're doing, it's really impossible to make any sense out of Leocal, because there the phrase was against the person or property of another, and if you were simply defining the actus reus, that language would have been superfluous. Thank you, Mr. Jennings. Justice Gorsuch? Good morning, counsel. I appreciate that you want us to draw a firm and clear line between recklessness and negligence, as the model penal code does, but I've been kind of curious by some of your responses which blur the line between recklessness and other mens rea, higher up, knowledge and intent, which the model penal code also treats as distinct and importantly so. And I guess I'm curious where you think the statute draws the line. Would a knowledge crime trigger the ACCA under your view? It seems like in the reply brief you can see that almost, but I'm not clear why. Yes, I believe that it would. And so let me just walk very briefly, if I may, Justice Gorsuch, through these different states of mind. Knowledge doesn't, frankly, tend to come up as often with these sorts of offenses, but the law generally treats intent and knowledge as effectively equivalent. Well, no, no, no, that's where you're wrong. It certainly does at tort, but the model penal code draws a firm distinction between them, and it's true that sometimes a jury can infer intent from knowledge because very few defendants will admit they secretly harbored a nefarious intention. And it's also true that in tort and other areas we sometimes collapse the two. But the model penal code treats them as distinct. So let's assume I'm right about that for just argument's sake, then what? Justice Gorsuch, let me make one quick point in response to that. Please, please, with my limited time. When you're talking about knowledge of the result as opposed to knowledge of some specific fact, I think the law does treat the two as effectively equivalent. When you act with knowledge that your conduct will cause a particular result. I really don't want to get involved in that argument with you. Assume that intent and knowledge are distinct mental elements, and it may be the statute depends on what the object of the mens rea may be different, whether the consequences you have to have a mens rea attached to or not. Forget about that. Forget about all of that. Why wouldn't we, if we're taking the statute seriously and looking at the rule of lenity, start with the assumption that until Congress tells us otherwise, this has to be an intense statute? I think with regard to offenses such as assault, murder, rape, and the like, the offenses that Congress seemingly intended to cover, what you're really talking about is intent with the exceptions that we've been talking about today. But I would say that the distinction between intent and knowledge on the one hand and recklessness is a meaningful one for the reason I suggested earlier. It's the distinction between an action that is intended to cause harm or that is known to cause harm. Thank you. Thank you. Justice Kavanaugh? Good morning, Mr. Shanmugam. If the statute said use of physical force, period, would that cover reckless offenses? That would be textually equivalent to the statute in Boisean, but I would have my fallback arguments concerning the context. Okay, but if we follow Boisean, then yes. So it's because it says use of force, it covers reckless offenses. It says use of force against another, it does not cover reckless offenses. I guess I'm just thinking that's a very strange line to draw. Judge Sutton and Verweeve, he's a very wise judge, as you know, has said sometimes the simplest explanation is the best explanation. And it seems like if you're trying to make sense of Leocal and Boisean together, the simplest and I think potentially the best explanation, I'll get your reaction, is negligent conduct is not use of force and reckless conduct is use of force for purposes of these statutes because I think to pick up on what Justice Thomas said, it would be a bit wild to say reckless crimes are covered by use of force, quote, statutes, but not by use of force against another, end quote, statute. So can you respond to that? Justice Kavanaugh, here's why I think the two statutes have to be interpreted differently. It's because of negligent offenses. I think that under the reasoning of Boisean, if you were dealing with that statute, section 922G9, which again came up in a very different context, that a negligent offense would qualify as the use of force because the use of force in a case involving negligence is volitional. By contrast, it is clear that under the different language at issue here, in the wake of this court's decision in Leocal, negligent offenses would be excluded. And I think with respect, I would rely on the reasoning of not Judge Sutton, but Judge Kepledge relying on this distinction in the text and relying on the very important distinction of the case. On the textual point, I think you're making a point, I think, that ordinary usage against the person of another is itself what excludes recklessness. But then if you look at the Boisean opinion, and I don't mean this as a gotcha point at all, but just kind of an example of ordinary usage, it describes the offense there, even though the statute didn't say against another. On page 1, any misdemeanor committed against a domestic relation. On page 4, recklessly assaulting a domestic relation. On page 7, the harm such conduct causes as a result of deliberate decision to endanger another. Page 8, who assaults another. Page 9, referring to the main statute, to recklessly injure another. And page 12, federal law applies to those with prior conviction for the use of physical force against a domestic relation. The point being, in explaining the ordinary use of the phrase, use of force, it was describing it indistinguishable from use of force against another. Can you respond to that? Yes, Justice Kavanaugh, very briefly. I think that that is simply reflective of the fact that the force falls on the victim when you're dealing with a reckless offense like a negligent offense. And again, the court went on for pages about the distinct context of Section 922G9, which was to serve the public safety purpose of taking guns out of the hands of anyone who is engaged in domestic abuse, even misdemeanors. Thank you very much. Justice Barrett? Good morning, Mr. Shanmugam. A few minutes ago you said that Congress, you described the heartland of crimes of violence as murder, rape, assault. I have a question about assault. Many statutes include recklessness in the definition of assault. So wouldn't the categorical approach mean that if recklessness isn't included, assault's out? Good morning, Justice Barrett. I would say two things about assault. First, I think it's important to keep in mind that we're talking here about felony assault and not about misdemeanor assault. And in Voisin, to the extent that the court talked about misdemeanor assault, that was simply because that statute covered felonies and misdemeanors. With regard to felony assault itself, the government correctly notes that in a number of states, it's around half of them, there are reckless felony assault offenses. But in the majority of those states, there are discreet assault offenses that could be committed intentionally or knowingly. Indeed, that's true in Tennessee, as the law at issue here reflects. And the fundamental problem with the government's effort to turn this into a state-counting exercise, like the one at issue in Voisin, is that here, there's no evidence that Congress sought to sweep in every variant of offenses, such as robbery and felony assault, as opposed to the most serious versions of those offenses, those that are committed intentionally or knowingly. And in Voisin, the court attached significant weight to the fact that if the defendant's interpretation were adopted, Section 922G9 would be affirmatively inoperative in a majority of the states. That's clearly not true here. And indeed, for more than a decade, we lived with our interpretation without any evident difficulties of under-inclusiveness or difficulties of administration. Let me just interrupt so I don't run out of time. I have another question. So the word against, let me just read you this definition, it can mean into contact or collision with, toward, upon. In Justice Kagan's hypothetical, where the bank robber is pulling out and she sees in the rearview mirror that someone is standing eight feet behind the car, why doesn't that definition fairly encompass a use of force that is toward, in collision with someone, or conscious disregard of the risk of someone? It doesn't seem to me a stretch of the English language to use it that way. We don't dispute, Justice Barrett, that in isolation, against could define the object of force. But here, the word against is being used with use of force. And that makes all the difference. The government, in its brief, talks about the application of force. It certainly would be true that if you hit a baseball against a windshield, that the ball has hit the windshield. But you wouldn't say that you've used force against the windshield if your intent is not for the ball to land on the windshield. Thank you. Mr. Schamdegam, a minute to wrap up. Thank you, Mr. Chief Justice. As the government prepares to present its argument, I would respectfully submit that there are really two fundamental problems with its position. The first is the one that we've been discussing, which is that the government's position really fails to come to grips with how this court construed the materially identical statutory language in Lea Cal. And, again, I think there's simply no way that that language can be construed to encompass reckless offenses but not negligent ones, never mind unambiguously as the rule of lenity would require. I think the second problem is that the government's interpretation would sweep in a host of unintentional and nonviolent offenses, particularly reckless driving offenses, which the United States Code itself breaks out from crimes of violence. And a mom who fails to buckle in her child and then gets into an accident is not the sort of offender who is likely to point a gun at someone in the future. Again, our interpretation was the interpretation of the lower courts with no evident difficulties for more than a decade, and the Court of Appeals here should have followed suit. Thank you. Thank you, Counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. The reasoning of this Court's decision in Boise resolves this case. As Justice Kavanaugh pointed out, Boise describes recklessly causing injury to a domestic relation as the, quote, use of physical force against a domestic relation, unquote. It necessarily follows that recklessly causing injury to the person of another is the use of physical force against the person of another. It makes no difference that in Boise the phrase against domestic relations was the Court's own descriptive language. Well, here the phrase against the person of another is Congress's descriptive language. No matter who says it, as Justice Kagan pointed out, it's a natural way to refer to the object of the actus reus of the crime. Petitioner nevertheless insists that the word against indirectly cuts out reckless offenses on the theory that it necessarily imposes a targeting requirement. But if that targeting theory were correct, and as Justice Gorsuch pointed out, even offenses with immense ray of knowledge and certainly offenses with immense ray of extreme recklessness would be excluded, a result the petitioner himself disavows. And this Court's decision in Boise, background principles of criminal law as to default states of liability, and common sense all group knowingly causing injury with recklessly causing injury, which by definition involves the knowing disregard of a substantial and unjustifiable risk that an injury will occur. That very line is reflected in the felony assault offenses of approximately 30 states, the robbery offenses of approximately 11 states, and the murder offenses of approximately 36 states in 1986. The petitioner's reading would apparently have excluded at least a form of and a very core form of. Counsel, it seems to me that you're putting an awful lot of weight on Wysine, against domestic relation there was used in a sort of colloquial manner. I think certainly not as a technical statutory interpretation. Well, Your Honor, I heard my friend on the other side to say that he thinks when you add against, the meaning changes because it's plain that you couldn't possibly use this language to mean what the majority of courts of appeals have seen since Wysine and I think this court's use of the phrase in its own language in the opinion in Wysine on page 2282 illustrates that that plain meaning argument that he's making can't possibly be right. It shows the language can be used in this way and Congress did use the language that way. Recklessness does cover a fairly broad range. You know, it does cover like swinging the baseball bat that slips. But as I think your friend on the other side just noted, it can also cover things like, you know, failing to buckle in the child in the car seat or texting while driving. And I don't think in any of those situations you would say that that's using force against those individuals. Well, a couple of points, Your Honor. First of all, as to the driving examples, we're not really talking about reckless driving in the abstract. We're talking about cases in which someone's been charged with felony assault based on his or her conduct with a car. And I think another... Maybe I'm wrong, but don't people get charged with that in some instances when they're doing something like, you know, texting while driving or that sort of thing? Your Honor, I'm not going to say it's never happened. But I think we describe it pages 41 to 42 of our brief. I'm sorry, pages 38 to 40 of our brief. We describe the examples of reckless assault based on conduct with a car that they've been able to come up with. And they're all much more extreme than that. These are people who are vastly exceeding the speed limit through neighborhoods, running various stop signals. Then they T-bone someone, they head-on collide with someone, or they kill someone. Well, are you comfortable describing that activity as a crime of violence? The activity I just described? Yes, Your Honor. And as for the label, I think while the courts looked at that as to the degree of force, it doesn't make much sense to look at it as to the mens rea. There's reckless conduct like shooting into a crowded house that I think everyone would describe as violent. And there's intentional conduct like an Agatha Christie-style sedate murder by poisoning someone's tea that I don't think anyone would really describe as violent, but that everyone agrees is covered. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, just briefly, if you could, there seems to be a bit of tension between Wyzine and Leo Cal. Could you just comment on that and then also spend a little bit of time explaining why Leo Cal doesn't imperil your case? Sure, Your Honor. I think that Wyzine itself resolves any tension between Wyzine and Leo Cal, because Wyzine explains that the reasoning of Leo Cal is simply a distinction between accidental offenses, which would include negligent crimes, and non-accidental offenses, which Wyzine makes clear include reckless crimes. Now, it doesn't focus at all on the linguistic distinctions between the two statutes, and I'll get to that in one second, why those shouldn't matter. But the reason we know that – the reason Wyzine doesn't focus on that is because Wyzine accepted that even under the statute at issue in that case, that force against a victim was required. And that can be shown from the court's own example of someone who recklessly throws a plate at a wall. It wasn't enough that the person knew or intended to use force against the plate. The critical question for whether the main assault statute was covered was whether the person was reckless that a shard from that plate might hit the domestic victim. And the reason that the additional language doesn't matter is because it has independent weight. My friend on the other side suggests that it has no meaning if it doesn't impose the targeting restriction that he would impose, but it actually does two things. First of all, it makes sure that the injury is to a person and not to property. But even as the similarly worded statutes that include both persons and property, the requirement that it be against another is a significant limitation. It's why arson does not qualify as a crime of violence under 18 U.S.C. 16A or 924C3A, because you can commit it by burning down your own house for the insurance money. So we can't include that crime under phrases like this. If the residual clause were still in use and had not been done away with as unconstitutionally, wouldn't that be a more natural place for this particular case or this charge? Your Honor, there's substantial overlap between the residual clause and the elements clause, but they each have their distinct role. And to the extent that my friend on the other side is suggesting that the residual clause might have excluded this or might not have, I think the elements clause here focuses on crimes that actually involve the use of force, where someone is, in this case, actually injured. And in those circumstances, I think reckless crimes were clearly crimes Congress would want to cover, because we know that they wanted the elements clause to reach things like robbery, felony assault, and certainly second-degree murder. Thank you. Justice Breyer? Going back to the statute itself, what it does is it takes, say, possession of a firearm or ammunition, which is illegal, and it changes the sentence from no minimum, up to 10 years, to a 15-year minimum sentence, up to life. And that happens where you have three prior crimes that fit the definition. That's a pretty serious consequence. So this Court, I think, has struggled to try to make sure the really bad things are in those three priors and not things that are not quite so bad. So that's why I find Leocal and Begay pretty much on point. Now, Begay, we had drunk driving. And doesn't quite a few states make drunk driving, they put in that requisite. All right. We had it, and we said in the residual clause, you have to have, the residual clause is closer to what you want, because it talks about a serious potential risk of physical injury. And we said there has to be conduct in those three priors that is violent, aggressive, and purposeful. Now, when you have a residual clause, you have words that are much closer to here. And we're trying to get out of drunk driving because it just isn't the right category, given the statute. Why isn't this case a fortiori? Well, Your Honor, in Begay, this Court was considering a drunk driving statute that didn't have a mens rea requirement at all. And it didn't reach the question whether reckless felony assault, which is what these cases that we're talking about here, would be covered by the residual clause. The second thing that I would say is the Court never resolved whether the residual clause covers reckless offenses. And so it really mattered whether it did. I don't think that necessarily cuts in Petitioner's paper. But the third thing I would say is, even if you thought it didn't, I think that actually makes our case stronger. Because if we can't get in things like reckless murder under the residual clause, then Congress surely wanted to include them under the elements clause. As I was saying to Justice Thomas, the elements clause is more restricted in that it is directed at occasions where force is actually used. Whereas the residual clause, and ultimately to its doom, was focused on possibilities and whether or not something might ultimately result in the use of force. I'm sorry, Justice Breyer. Is there a difference between the words you just used, which were reckless murder with a car, and the words I'm going to call drunk driving? I mean, is that a big difference? And after all, it was because we thought there wasn't, that that word purposeful appears in Begay. So that was the basic reason. So what do you think about that? Again, Your Honor, the drunk driving statute in Begay didn't have a mens rea requirement at all, The word purposeful did not purport to be an interpretation just about driving. It purported to be an interpretation of the residual clause, which is relevant here in so far as the reasons I said. Yes, Your Honor, but I... Purposeful was across the board. Well, Your Honor, another thing the court was trying to do in that case, and it ultimately abandoned this project, was to grope for a standard that applies to the residual clause in particular. And what it did in that case was it looked to the enumerated offenses clause that directly precedes the residual clause, and it tried to figure out some way to group those four particular offenses together. We don't have that issue. Counsel, Justice Alito? Well, it's always a pleasure to have another case involving the Armed Career Criminal Act. It is a real favorite. Do you think that legal allows us to say that the phrase against the person of another does not speak at all to the question of mens rea? Your Honor, I think it may have some kind of contextual influence on mens rea, but no more so than it had in Forcine, because in Forcine, as I was saying earlier in response to Justice Thomas, you had a similar context where you needed somebody who was injured. And I want to be quite clear that we really are only talking today about crimes that require the actual causation of injury. Somebody actually was hurt, and then the defendant was reckless as to whether someone would get hurt. Because those are the set of crimes that the court has in front of it today, and only in crimes that involve the actual causation of injury would we even be able to prove that a force capable of causing pain or injury, in fact, took place. You point out that if we adopt petitioners' interpretation, crimes like second-degree murder and a lot of assault offenses will not qualify as ACCA predicates. And the petitioner responds that if we adopt your interpretation, drunk driving offenses and other less serious offenses involving reckless conduct will qualify. So which of these two parades of horribles is more horrible? If horribleness is a good thing, then I think our parade of horribles is more horrible, and let me give you two concrete reasons why. First of all, we've done a survey, and these numbers are a bit approximate, but we're only aware of maybe a maximum of approximately 10 or 12 states that have separate driving-specific offenses that we think might even qualify as ACCA predicates, and most of those states label those crimes vehicular assault or vehicular homicide. And so they treat them much more seriously than they do kind of regular drunk driving. And I guess the second and related point I would make about that is, to the extent that my friend's position depends on these kind of isolated examples of seemingly innocuous conduct that might in theory be covered by one of these statutes, this court in Quarles may recall that one of the major arguments made there was that there were seemingly innocuous ways to commit certain forms of burglary, and the court looked at what Congress was trying to do as a categorical matter, and just because that can happen once doesn't mean it's going to happen three times to someone such that they're classified under the ACCA. And if you look at the set of offenses that they would cut out, which are felony assault by injury, second-degree murder, and common law robbery, which the court described in Stoeckling as a paradigmatic elements clause offense, I think it's quite clear that our reading is much better than theirs. Thank you, counsel. Justice Sotomayor? Counsel, in terms of the parade of horribles, I do think it's important to remember that judges always have the ability to decide or to hold that reckless conduct doesn't qualify you for an ACCA enhancement, but that the crime you committed, all the horribles that you described, do command a greater sentence. So it's not as if these people are going to get away stock-free. I also point to something that the government said in its response brief in Volzheim, and that response brief made an opposite point than the one you advanced today. I'm quoting from your Volzheim brief. Quote, while both provisions contain the phrase, use of physical force, the domestic violence provision and ACCA, the misdemeanor crime of violence definition omits the remainder of the Leo Cattles provision section 16 definition, which qualifies that the force is against the person or property of another. You said the against phrase was crucial to Leo Cattles' holding, which required a higher mens rea. And yet today you're telling us that that force directed against the person has no meaning, that the only meaning is was your conduct reckless and that it happened to cause physical injury. Were you wrong then and right now? Your Honor, I don't think that we placed that amount of weight on the phrase in that case. I think we noted that Leo Cattles had relied on it, but I don't think we were placing this positive weight on it. But even if you see some tension between our position in Volzheim and our position here today, there's been a significant intervening event, which is the decision in Volzheim, which I think clears up the misimpression that the courts of appeals have been laboring under, as Justice Alito referred to in my friend's part of the argument, that Leo Cattles actually controlled the question of reckless conduct. And Volzheim did so in a way that didn't rely on those linguistic distinctions. Volzheim makes clear that what Leo Cattles is really about is the difference between accidental and reckless conduct. And that's the exact line that the criminal law draws. And there's a really good reason why the criminal law draws that line. It's because the distinction between knowledge and recklessness is simply one of degree. And the distinction between recklessness and negligence... My time is limited. In Leo Cattles, we said that a DWI cannot be a crime of violence because it does not require the use of force against the person of another. And it didn't. It happened to be negligence. But its entire focus was, was the force directed at another person? It seems to me that since Tennessee and many other states are putting drunken driving in their assault statutes like this one, that what we're doing is sub silencio overruling Leo Cattles. Maybe not sub silencio, but that's what our intent is. And that's what you're asking us to do. No, Your Honor. Leo Cattles expressly reserved the question of reckless offenses, so it didn't consider this here. It was like, as in Begay, considering an offense that didn't have a mental state at all. So I don't think that's what we're asking you to do today with sub silencio overruling Leo Cattles. We don't think that the mere crime of drunk driving as such is included within the act. It would not be an act of predicate. Thank you, counsel. Justice Kagan? Mr. Bacon, as you know, Wasim expressly reserved this question, just as Leo Cattles expressly reserved the recklessness question. And in that footnote where it does reserve it, it says the context and purposes of the statutes may be sufficiently different to require a different reading. And this, I suppose, goes back to Justice Breyer's questions, because I think the argument might go, or at least part of the argument might go, that in ACCA, one is defining what it means to be a violent felon for purposes of imposing an extremely significant punishment, whereas in this statute, one is talking about misdemeanors and applying only a prophylactic rule about gun possession. And further, I mean, Wasim spends as much time talking about the effects of coming out the other way than it does about the test. In other words, it basically says, if we don't hold the way we are holding today, this entire federal scheme will be rendered inoperative. And that seems very different, no matter if you can come up with, you know, 13 robbery statutes or something like that. That seems an extremely different consequence of a ruling. So I guess I would ask you to respond to that set of things that might serve to distinguish this case from Wasim. Sure, Your Honor. Let me say three things about that. First of all, I think the different context actually cut in our direction, because first of all, they removed the Second Amendment concerns that Justice Thomas voiced in his dissenting opinion in Wasim. And second, the second point I would make is that here you require three serious felony offenses, whereas there a single misdemeanor crime would have sufficed. And as I was suggesting earlier, we're talking about cases where people have been charged with felony assault or murder or robbery or a serious offense like that. And we're not simply talking about cases where one crime makes all the difference. And the third thing I would say is that if you hold for petitioner in this case, I think you're going to reintroduce the exact same anomaly that you avoided in Wasim. As we explained on page 36 of our brief, the similarly worded elements clause in 18 U.S.C. 16, which defines crime of violence, is incorporated into the Immigration and Nationality Act definition of crime of domestic violence. And if these reckless crimes are excluded, then the 35 state misdemeanor assault offenses that the court focused on and foreseen wouldn't qualify under the Immigration and Nationality Act either. I think it would be quite surprising to Congress to find that a fairly subtle change of wording, one statute requiring that the crime be committed by domestic relation and the other statute requiring that it be against the person of another, make that big a difference as to whether the scheme works as it was intended to. Thank you, Mr. Fagan. Justice Gorsuch? Good morning, Mr. Fagan. I guess one other possible distinction textually between this and Wasim, of course, is that we don't have the phrase against the person or property of another. And I know in that case, and we do here, and in Leocal, I guess I'm still stuck. You don't seem to want us to read very much into that phrase, but Leocal says, whether or not the word use alone supplies a mens rea element, the party's primary focus on that word is too narrow. And it goes on to say the key phrase, use of physical force against the person or property of another, most naturally suggests a higher degree of intent than negligent or merely accidental. Suggesting that phrase has some work to do in mens rea. And I guess I'm still struggling with how, if we're to take our precedent seriously, we ignore that instruction, which isn't present in Wasim, relevant in Wasim. Sure, Your Honor. We're not asking you to ignore it. I think you could say the same thing here, that it's, of course, informed by the context of a requirement to use force against the person of another. But that answer, that it just relates to the object of the force, runs directly counter to Leocal's express instruction that it has something to say about mens rea. And it also renders, as your friend pointed out, that phrase, person of another or property of another, superfluous in Leocal itself. What do we do about that? Well, Your Honor, let me say, I appreciate the chance to clear this up, but let me clarify that I think grammatically, under the last antecedent rule, the phrase just modifies physical force, so it refers to the object of physical force. Yeah, but that doesn't work because of Leocal's express instruction that it has something to say about mens rea. Right. That doesn't work as a matter of precedent if we're to take our precedent seriously. So I think what Leocal recognizes is that when you're interpreting the clause as a whole, you take the words in context and you take the word used in the context of that language. But the critical point I would make here is that I think Voicene is interpreting it in the same type of context. That phrase isn't in Voicene is your problem. Let me ask you another question if we're not going to get poor progress there. What do we do about the rule of lenity? And this statute is supposed to provide notice not to nine judges in the Supreme Court who are struggling with it, but to ordinary Americans. And if we can't make heads or tails of it, and every circuit to have addressed it up until recently came out against you, why shouldn't we, if Congress wishes to legislate here further, and of course it may, why shouldn't we hear say the tie goes to the defendant, the presumptively free defendant? Well, Your Honor, the rule of lenity, of course, requires grievous ambiguity, and Voicene found the result there to be plain, notwithstanding that the circuit consensus was against it. And I think it would be quite anomalous to say that here, as the rule of application, the rule of lenity would require that the court is left to do nothing more than guess as to what Congress intended. I think it's particularly clear after Voicene what Congress intended to do here. Thank you, counsel. Justice Kavanaugh? Good afternoon, Mr. Fagan. I want to pick up on Justice Gorsuch's point about precedent, because we have two precedents we have to make sense of, Leocal and Voicene. And in your brief, I thought the answer that you were giving about the distinction of Leocal, and this is page 13 of your brief, the court in Voicene accordingly made clear that the critical distinction recognized in Leocal itself is between accidents and recklessness, not recklessness and knowledge or intention. In other words, that Leocal stands for the idea that negligence doesn't come within this kind of language. Is that right? That's right, Your Honor. And as I was saying earlier, I think the reason why that is true, and it comports with traditional criminal law principles, where under the model penal code on which my friend has been relying, recklessness is the default mens rea, and the reason why that is. Exactly. I'm sorry to interrupt, but the point being that Leocal recognizes the distinction that's traditional. Negligence out, recklessness in above per model penal code is usually considered more important, but you don't have to guess because you have Voicene, I guess, that draws that distinction. So that's what I thought the distinction was between Leocal and Voicene, but as your brief said. The other thing I wanted to get to is the notice point has been raised here, and it seems to me that the notice in this kind of statute is a little bit different, and this is more of a comment, and you can fill in the gaps of it, but we're not talking about notice for committing reckless assault under Tennessee law. What we're talking about is someone who's been convicted three times for separate offenses under Tennessee law or other state law, who then, after being convicted of three violent felonies, knowing they shouldn't possess firearms, nonetheless possesses firearms on notice that they shouldn't possess firearms because they've been convicted of these prior offenses. So you actually have to four times have committed some pretty significant violation before you fall into this statute. Is that—I mean, that's my understanding, and I think that's an important point on notice, but you can elaborate if you wish. Your Honor, I think that's exactly right, and I think another point I would emphasize here is, of course, the defendant knows if he has at least one conviction, he is undertaking a criminal act, and so I think he is clearly sufficiently on notice here, and I think the court has understood this phrase, physical force against the person of another to encompass the type of reckless conduct that we're talking about here. I think one example is the court's own recent decision in Stokeling. Stokeling recognized that a typical robbery offense involving a struggle for an item satisfies the elements clause. Now, we wouldn't really say that the force applied by a victim pulling on one end of a suitcase is targeted— sorry, the force applied by a defendant pulling on one end of a suitcase is targeted at the victim who's pulling on the other end, as opposed to being targeted at the suitcase itself. But Stokeling's holding reflects that the offense nevertheless involves the use of force against the person of another  That's the way Congress meant the language, that's the way the court understood it in Stokeling, and I think it provides a person who understands English with fair notice of what's covered here, just like page 2282 of the court's decision in Vorstein does. Thank you, counsel. Justice Barrett? Good morning, Mr. Fagan. I have a question about the language attempted or threatened. So, you know, the statute qualifies a crime of violence must have as an element the use, attempted use, or threatened use of physical force, suggesting that the kind of use of physical force is the kind that can be attempted or threatened. Does that have any significance here? Do those terms, attempted and threatened, make sense when applied to reckless conduct? Your Honor, I think traditionally under the criminal law, you can have an attempt to commit a crime with recklessness. It's going to, the elements of the attempt crime and the mens rea for the attempt crime, are going to look somewhat different than the crime that actually achieves its completed result. But I don't see any reason why and they haven't really given any reason why the mens rea or all three of these things have to track one another. And even if it did, threatening doesn't actually require intent to use force. A simple bluff would suffice in those circumstances. I also think it would be quite anomalous to include crimes that involve only the threatened use of force, like bluff, or the attempted use of force that the criminal law and the sentencing guidelines traditionally treat as less culpable as active predicates, but not cases in which someone has actually injured someone in knowing disregard of a substantial and unjustifiable risk of doing so in gross deviation from the standard of conduct that an ordinary person would follow under those circumstances. A defendant who has, sorry. I was going to ask you a question about Johnson and Vagueness. So, you know, one of the amici argues that including recklessness in ACCA is going to drag us into some of the same problems that we had under the residual clause, and this is picking up a thread that you started to touch on earlier. Is that true? You know, and requiring courts to try to gauge what it means to pose a conscious disregard of a known risk? You know, how risky is the risk? Well, Your Honor, I really don't think so, because we're just talking about the standard definition of recklessness. It's the exact same inquiry that courts are already doing under FOISINE, and the courts adopting our interpretation of the ACCA appear to have no difficulty doing. I'd also emphasize something this court said at the end of Quarles, which is that at the end of the Quarles opinion, it makes clear that what's really required under the Taylor categorical approach is some kind of rough correspondence, and that we don't look at these very minute curlicues of particular state laws. And so I think the combination of all those three things, in particular the practical evidence that there hasn't really been any problem with this, shows that there's really no practical concerns here. Thank you, counsel. A minute left, Mr. Shagan. Thank you, Mr. Chief Justice. Even Petitioner doesn't really believe that the ACCA's language requires targeting, or else he'd limit it solely to specific intent crimes, and he wouldn't include knowledge or be hedging about extreme recklessness. This court should reject his gerrymandered constriction of the ACCA to exclude crimes involving recklessness. Harming someone by knowingly disregarding their physical safety is a serious crime. It forms the core of numerous aggravated assaults, common law robbery, and murder offenses, and cutting those crimes out of the ACCA would defy both common sense and Congress's clear intent, as expressed in the statutory text. All of those crimes involve physical force against the person of another, and Boiseen holds that the word used encompasses recklessness. Petitioner doesn't challenge that holding, and the court should adhere to it. Thank you. Thank you, counsel. Three minutes for rebuttal. Mr. Shanmugam. Thank you, Mr. Chief Justice. This case really boils down to one proposition. Our interpretation faithfully reconciles Leocal and Boiseen, and the government's doesn't. As to the text, both in Leocal and Boiseen, this court made clear that the word used is synonymous with active employment, and it would be very odd to say that someone recklessly actively employs force against another person. And the government's effort today, for the first time in the case, to suggest that against the person of another modifies force and not use of force is simply grammatically incorrect. But more generally, the government's position is breathtakingly overbroad. The government itself today acknowledges that it would cover reckless driving, which a provision of the Immigration and Nationality Act, Section 1101H, treats as a discrete category from crimes of violence. And as to the legislative history, if Congress had wanted to cover every variant of robbery and assault, and there's no evidence to that effect, it surely would have enumerated those offenses. And it bears repeating that under our interpretation, intentional or knowing variants of those offenses would still be fully covered. The government's argument today really boils down to an argument that the court resolved in Boiseen, a question that it expressly left open, and that the court should effectively overrule Leocal, at least as to negligent offenses. In Castleman, this court already held that the statute at issue here and the statute at issue in Boiseen should be construed differently in light of their different contexts. And it is deeply ironic that the government is here today saying that the two statutes should be construed the same way. In Boiseen, the government included a seven-page section in its brief, seven pages arguing that the statute should be construed differently. Indeed, at oral argument in Begay, the lawyer for the government conceded that even reckless homicide would not qualify under the force clause. It's only been since the court's decision in Boiseen that the government has been pushing the envelope and trying to do under the force clause what it can no longer do under the residual clause now that it has been invalidated. As this court has said time and again in its many ACCA cases, this is a recidivist statute that should be construed narrowly. If a defendant is not subject to the ACCA, he or she can still be subject to a sentence of up to 10 years in prison. And finally, this is a paradigmatic case for the rule of lenity, which Justice Kavanaugh applies in the sentencing context no less than it does in the substantive criminal context. Where every court of appeals has construed a statute one way for more than a decade, a defendant should not be subjected to a 15-year mandatory minimum based on a decision involving a different statute that the government itself said should be interpreted differently. The court of appeals interpretation rests entirely on an over-reading of this court's decision in Boiseen and an under-reading of this court's decision in Leocal, and its judgment should be reversed. Thank you, counsel. The case is submitted.